UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTONIO M. MARTINEZ,

Petitioner,

v.

SCOTT FRAUENHEIM,

Respondent.

Case No. 19-cv-05498-WHO (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Antonio M. Martinez seeks federal habeas relief under 28 U.S.C. § 2254 from his state conviction for murder on grounds that trial counsel rendered ineffective assistance and the cumulative effect of counsel's errors resulted in a constitutionally unfair trial. None of his claims has merit. The petition is DENIED.

## BACKGROUND

In 2015, a Monterey County Superior Court jury convicted Martinez of first degree murder and found true a sentencing enhancement allegation that he personally and intentionally discharged a firearm causing death.[1] (Pet., Dkt. No. 1 at 1-2.) That same year, a sentence of 50 years to life was imposed. (*Id.* at 1.) After Martinez's attempts to overturn his convictions in state court did not succeed, he filed this federal habeas action.[2]

The state appellate court summarized the facts of the crimes as follows:

> [Martinez] was convicted of murdering Juan Carlos Pedraza. The prosecution's theory was that [Martinez] was a methamphetamine seller who shot Pedraza, a methamphetamine addict, because Pedraza owed him money for drugs. The defense theory was that [Martinez] was misidentified as the

---

[1] *People v. Martinez*, No. H042444, 2017 WL 3712356, at *1 (Cal. Ct. App. Aug. 29, 2017).

[2] Martinez did not file a traverse, though he has had many months in which to do so. If Martinez wishes to file a response to the arguments raised in the Answer, he may raise such responses through a motion for reconsideration.

shooter.

## A. The Shooting

At about 7:00 p.m. on March 18, 2014, police responded to a report of a shooting at 718 Towt Street.  Pedraza was lying on the sidewalk in a large pool of blood, with very large gunshot wounds to his chest and upper arm.  Pedraza had 0.2 grams of methamphetamine in his possession.

Resuscitation efforts were unsuccessful.  An autopsy revealed that Pedraza had been shot with a shotgun.  The shotgun wound to his chest had been inflicted from very close range:  six inches or less.  The shotgun wound to his arm had been inflicted from one to two feet away.

Eduardo Silva lived across the street from Pedraza.  He heard two gunshots and went outside to the front of his house.  He saw Pedraza's body lying on the sidewalk and a white SUV that 'peeled out' as it backed out of the driveway of 718 Towt and drove away quickly.  The SUV did not have a license plate; it had a yellow star in the license plate area.  Silva did not notice any damage to the passenger side of the vehicle.

Robert Padilla lived next door to Pedraza.  While in his back yard, he heard two 'bangs' and then the sound of a car doing a 'peel-out.'  He looked over his fence and saw Pedraza on the ground.

CC-1 was 11 years old at the time of trial.  He lived about four houses away from Pedraza.  He was playing soccer in his front yard when he heard the shooting.  He saw a man shooting from a white SUV, '[l]ike a Yukon.'  He believed Pedraza was walking home from the store when he was shot.

## B. Eyewitness Identification

Cristian Garcia was Pedraza's nephew.  On March 18, 2014, Garcia went to Pedraza's house at about 5:00 p.m.  Pedraza asked Garcia to sell all of Pedraza's construction tools.

While Garcia was at Pedraza's house, four older men came by and spoke with Pedraza.  Later, [Martinez] drove up in a white Yukon.  [Martinez] pulled into the driveway and began talking with Pedraza.  Garcia approached [Martinez] to ask for a cigarette.  Garcia saw [Martinez]'s face clearly.  Pedraza spoke with [Martinez], who remained in the Yukon, for about 20 to 25 minutes.  Garcia remained nearby for most of the conversation, but he eventually went to the back yard.  Right after he went to the back yard, he heard two gunshots.  He heard a car leaving and ran to the front of the house, where he saw Pedraza was dead.

2

United States District Court
Northern District of California

Garcia was interviewed by police on the night of the shooting.  The next day, Garcia viewed a photographic lineup, and he selected [Martinez]'s photo.  At trial, Garcia testified he was sure that [Martinez] was the shooter.

In June 2014, Garcia was arrested for stealing a car.  After that arrest, Garcia had 'spent some time at' Atascadero State Hospital (Atascadero)—from November 6, 2014 to January 16, 2015.[3]  Garcia testified that had not been 'feeling well' at that time, but by the time of trial he was taking medication and was feeling better.

Further testimony about Garcia's mental health came from Elizabeth Lee, a psychologist.  Garcia had been diagnosed with schizophrenia and had a history of methamphetamine use.  Garcia told Dr. Lee he had not been using methamphetamine around the time of Pedraza's death.  Garcia admitted that he had experienced auditory and visual hallucinations in the past, but he did not describe having any hallucinations at the time of Pedraza's death.  When Garcia had testified at a preliminary hearing on February 17, 2015, he indicated that he could hear voices, that he saw objects moving, and that he had seen Jesus.

## C.  [Martinez]'s Arrest and Police Investigation

The day after the shooting, police received a report of a vehicle matching the description of the one used by the shooter:  a white GMC Yukon with Gold Star paper plates.  The Yukon, which was registered to [Martinez], was located on the corner of Cortez Street and Towt Street, about a block and a half from Pedraza's residence.  The passenger side of the Yukon had recently been damaged:  a photo taken 10 days before the shooting showed no damage to the vehicle.  Gunshot residue was found inside the driver's side door and on the outside of the driver's side door.  A license plate was located on the passenger side floorboard.

[Martinez] was arrested on March 20, 2014, two days after the shooting.  [Martinez] had a large amount of cash—over $6,000—in his possession.  [Martinez]'s wallet contained a small piece of cardboard with two phone numbers and two names written on it; one was Pedraza's nickname, 'Plebe.'

Around the time of the shooting, [Martinez] had been staying with the Becerra family, which included brothers Ivan and Jose,[4] in the garage of a

---

[3] "As discussed later in this opinion, Garcia had been found incompetent to stand trial."

[4] "Because Ivan and Jose Becerra share the same last name, we refer to them by their first names for clarity, and not out of disrespect."

residence on Kennedy Street.  A box containing empty shotgun rounds was found in the garage.  The BB's from those rounds were in a plastic bottle. [Martinez]'s cell phone was located at the Kennedy Street residence.  The cell phone contained no text messages or phone numbers that appeared to be associated with drug sales.

### D.  Pedraza's Drug Use

Carrie Appling–Lake knew Pedraza because he did work for her property management business and for her family.  She had known him for over 10 years.  The last time she had seen Pedraza, she noticed he was 'a lot thinner' than before.  Also, Pedraza had always been prompt about returning her calls in the past, but he had stopped getting back to Appling–Lake in a timely manner.  The last time Pedraza had done work for Appling–Lake, he had showed up an hour late and did not have a working truck.

Pedraza's son, Josue, testified that he and other family members had moved out of the Towt Street residence a few months before Pedraza's death due to Pedraza's drug activity.  Pedraza would bring other drug addicts to the house, which was 'a big mess.'  Pedraza had been experiencing financial difficulties because of his drug use.  Josue knew [Martinez] as a friend of Pedraza's who would come over and drink with Pedraza.

### E.  Interviews with Ivan and Jose Becerra

After [Martinez]'s arrest, Ivan told the police that [Martinez] sold drugs and that he (Ivan) had been a customer.  Ivan initially stated that he had never seen [Martinez] with a gun, but he later admitted he had seen [Martinez] with a revolver a week earlier.  Ivan also admitted that he knew [Martinez] had obtained a sawed-off shotgun from Jose in exchange for drugs.

Jose was arrested after the search of his house, and he was interviewed by the police.  After initially denying that he had given [Martinez] a shotgun, Jose admitted he had seen [Martinez] with a shotgun once.  Jose eventually told the police he had sold [Martinez] a shotgun about a month earlier.

At trial, both Ivan and Jose claimed they had lied during their police interviews.[5]  Jose admitted that he would sometimes use methamphetamine with [Martinez].  Ivan testified he had used methamphetamine on the day he was interviewed by the police.

(Ans., State Appellate Opinion, Dkt. No. 22-15.)

---

[5] "Ivan and Jose both testified pursuant to immunity agreements."

United States District Court
Northern District of California

As grounds for federal habeas relief, Martinez raises sixteen claims that trial counsel rendered ineffective assistance of counsel and a claim of cumulative error.[6]

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law

---

[6] These are the claims that remained after the Court granted respondent's motion to dismiss three claims of prosecutorial misconduct on grounds of procedural default.  (Dkt. No. 19.)

was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

Martinez claims that trial counsel rendered ineffective assistance by failing to (i) file a motion to suppress the pretrial identification by Garcia; (ii) file a *Pitchess* motion; (iii) obtain rap sheets for Ivan and Jose Becerra; (iv) present cell phone records and GPS evidence to show the location of petitioner's truck at the time of the shooting; (v) file a motion for a change of venue; (vi) present evidence about the source of the $6,000 in cash the police found on him; (vii) investigate a previous assault on the victim's son; (viii) investigate the witness who allegedly saw Garcia kicking the victim; (ix) object to the pretrial statements of Jose and Ivan Becerra; (x) object to Garcia's March 18, 2014 statement to police; (xi) present evidence that Garcia was the actual shooter; (xii) request modification of CALCRIM No. 315; (xiii) request an instruction on willfully false testimony; (xiv) object to Detective Zuniga's testimony that Garcia had witnessed Pedraza's murder; (xv) request a live line-up; and (xvi) investigate Garcia's statements to investigators.  He also claims that (xvii) there was cumulative error.  (Pet., Dkt. No. 1 at 5-9.)

In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *Strickland v. Washington*, 466 U.S. 668, 687-68 (1984), "not whether it deviated from best practices or most common custom," *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland*, 466 U.S. at 690).  "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689).

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,

United States District Court
Northern District of California

466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693).

AEDPA "erects a formidable barrier to federal habeas relief." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013). The barrier is even more formidable when seeking relief on an ineffective assistance claim. "In fact, even if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant relief if '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have chosen." *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (quoting *Titlow*, 134 S. Ct. at 23-24.)

The standards created by *Strickland* and § 2254(d) are "highly deferential." *Strickland*, 466 U.S. at 689. "This analysis is 'doubly deferential' when, as here, a state court has decided that counsel performed adequately." *Reeves*, 141 S. Ct. at 2410; accord *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "[I]n reviewing the work of their peers, federal judges must begin with the 'presumption that state courts know and follow the law.'" *Reeves*, 141 S. Ct. at 2411 (quoting *Woodford v. Visciotti*, 537 U. S. 19, 24 (2002)). "[A] federal court may grant relief only if every 'fairminded juris[t]' would agree that every reasonable lawyer would have made a different decision." *Id.* (quoting *Richter*, 562 U. S. at 101.) When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

The ineffective assistance claims were not raised on direct review to the state courts, but rather through habeas petitions to the state appellate and supreme courts, which summarily denied the claims. When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state court decision is

objectively unreasonable.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  This review is not de novo.  "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 98.

### i.      Failure to File a Motion to Suppress Identification

Martinez claims that counsel rendered ineffective assistance by failing to move to suppress the pretrial identification of him by Christian Garcia during a photo line-up. (Pet., Dkt. No. 1-1 at 13-26.)  He contends that Garcia never identified his photo during the photo line-up, the identification process was impermissibly suggestive because detectives "single[d] out" his photograph and their "conduct was unnecessarily suggestive."  (*Id.* at 17-18.)

According to trial testimony, Detectives Zuniga and Gonzalez interviewed Garcia at his residence the day after the homicide.  (Ans., Reporter's Transcript, Dkt. No. 22-8 at 511.)  Before they showed him photographs of possible suspects, Zuniga admonished Garcia that the photographs "may or may not contain a picture of the person who committed the crime," that he was "pay no attention" to the "type of style of the photographs," to "[k]eep in mind that hairstyles, beards, and mustaches may be easily changed," and that photos "may not always depict the true complexion of a person."  (*Id.* at 512.)  He was shown six photographs one by one.  (*Id.*)

Zuniga testified that when Garcia saw a photo of Martinez (Photo 4) he "stepped back" from the table, his "eyes got pretty large," he clenched his teeth and fist, and said something like, "[Y]eah, that looks — that's him.  That looks like him."  (*Id.* at 514.) After seeing the entire line-up, he paced back and forth and said, "That's him.  That's him. I don't know why he did it.  I don't know why that guy did it, but that's him."  (*Id.* at 516.)

The transcript of the audio recording of the interview confirms much of this testimony.  Zuniga admonished Garcia before showing him the photographs one by one. (*Id.*, Dkt. No. 22-11 at 9-10.)  Garcia did not recognize the persons in Photos 1-3, but when he saw Photo 4 he said, "Uh . . . I, I think it's that dude, but…."  (*Id.* at 11.)  A few

seconds later he said, "it is the same face." *Id.* When Zuniga asked, "You, you know that's him?" Garcia said, "Well, yeah, you know? He . . . " (*Id.*) When Zuniga had him look at Photos 5 and 6, Garcia said, "I don't know." (*Id.*)

Zuniga came back to Photo 4. "Let's talk a little bit about this photo right here, Christian. I noticed that when you looked at it, that you said that that [*sic*] that's him, but you don't want to get involved." (*Id.* at 12.) Then Zuniga asked him to look at Photo 4 again:

> Zuniga:  Uh, take a look at this photo for me.
>
> Garcia:   No, I, I don't know that dude.
>
> Zuniga:  How . . . ?
>
> Garcia:    I don't know.
>
> Zuniga:  I, I know . . .
>
> Garcia:   But it's, it's him for sure.  But . . .
>
> Zuniga:  Hundred percent?
>
> Garcia:   Yeah.  You know you can tell just by the face, you know?

(Ans., Dkt. No. 22-11 at 14-15.) Garcia recalled upon questioning that on the day of the shooting his uncle had told him to bring a beer to the man in Photo 4, and that he had seen this same man at Pedraza's house once or twice. (*Id.* at 18, 19.) Garcia repeatedly said during the photo-line up procedure that he didn't "want to get involved" and that he didn't know why the shooting had happened. (*Id.* at 11-16.) He also declined to put his initials on Photo 4. (*Id.* at 15.)

Garcia identified Martinez at the preliminary hearing, (*id.*, Clerk's Transcript, Dkt. No. 22-3 at 61 (p. 15)), and at trial (*id.*, Reporter's Transcript, Dkt. No. 22-8 at 383, 442). At trial, he testified that on the day of the shooting, he was at his uncle's house when a white Yukon drove into the driveway and parked (*id.* at 380); he walked to the driver's open window and asked for a cigarette, at which time he clearly saw the driver's face (*id.*); the driver wore a hat, his head was shaved, and had stripe-like tattoos on his arms (*id.* at 382, 394-395); he thought the driver, who seemed to know Pedraza, had once lived next

9

door and once before had been at the house (*id.* at 384, 442); Garcia sat on the porch for about 20-25 minutes near the Yukon, while Pedraza and the driver talked, before walking to the back yard (*id.* at 437-438); while in the back yard he heard gunshots and a car "quickly" leaving (*id.* at 385); he ran to the front, saw a car pulling out, and saw that his uncle had been shot (*id.* at 385-386).  As noted above, at trial Garcia identified Martinez as the driver, and was "a hundred percent certain" of his identification.  (*Id.* at 441.)  He testified that when he saw Martinez's photo in the line-up he moved backward and testified he "was, like, wow,  I think that's the dude."  (*Id.* at 398-399.)  At trial he again identified the photograph he had chosen at the line-up.  (*Id.*)

Garcia has had mental health problems.  At trial psychologist Dr. Elizabeth Lee testified that Garcia has schizophrenia and "a history of methamphetamine use."  (*Id.* at 461.)  Lee testified that based on her review of a recording Garcia "appeared" to experience "[d]elusions and hallucinations" at the February 2015 preliminary hearing.  (*Id.* at 485-486.)  He also appeared to have "unusual, peculiar thoughts and auditory hallucinations" in April 2015.  (*Id.* at 487-488.)  But, there is no evidence he was experiencing delusions or hallucinations at the photo-line up.  Also, Zuniga testified that Garcia did not appear to hallucinate or act irrationally during the three interviews he had with him, which took up some five hours.  (*Id.* at 515-520.)  Garcia testified he was taking his medication at the time of the shooting in March 2014 and during the trial.  (*Id.* at 377-378.)

To show prejudice under *Strickland* from failure to file a motion, a petitioner must show that (1) had counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him.  *See Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999).

"A pretrial identification should be suppressed only where 'the photographic identification procedure was so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"  *Perry v. New Hampshire*, 565

1   U.S. 228, 238 (2012) (quoting *Simmons v. United States*, 390 U.S. 377, 384-385 (1968)).

2   Suppression "is not the inevitable consequence" if police use an improper procedure.  *Id.* at

3   239.  Rather, "the central question [is] whether under the 'totality of the circumstances' the

4   identification was reliable even though the confrontation procedure was suggestive." *Neil*

5   *v. Biggers*, 409 U.S. 188, 199 (1972).  The factors a court should consider are "the

6   opportunity of the witness to view the criminal at the time of the crime, the witness' degree

7   of attention, the accuracy of his prior description of the criminal, the level of certainty

8   demonstrated at the confrontation, and the time between the crime and the confrontation."

9   *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977)).  "Against these factors is to be weighed

10  the corrupting effect of the suggestive identification itself."  *Id.*

11      High deference is owed to a state court's rejection of a claim that counsel's failure

12  to move to suppress a pretrial photo-line up identification constitutes ineffective assistance,

13  a point the Supreme Court made in 2018 when it reversed a Ninth Circuit habeas grant on

14  such a claim.  *Sexton v. Beaudreaux*, 138 S. Ct. 2555 (2018).  "[D]eference to the state

15  court should have been near its apex in this case, which involves a *Strickland* claim based

16  on a motion that turns on general, fact-driven standards such as suggestiveness and

17  reliability."  *Id.* at 2560.  The Court emphasized that under *Richter* habeas courts are to

18  consider "arguments or theories [that] could have supported" the state court's summary

19  decision.  *Id.* (quoting *Richter*, 562 U.S. at 102).  Under the facts of *Sexton*, the Court

20  found the identification reliable because even though some factors weighed against

21  reliability, other factors weighed in favor of it.  *Id.*

22      Because Garcia's identification was reliable, counsel's decision to not file a motion

23  to suppress was reasonable.  Garcia observed Martinez face-to-face, spoke to him,

24  remembered he had seen him before, observed him for 20-25 minutes from the porch as

25  Pedraza spoke to him, was admonished before seeing any photographs, and confidently

26  identified him at the photo line-up.  *Braithwaite*, 432 U.S. at 114 (a court should consider

27  "the opportunity of the witness to view the criminal at the time of the crime, the witness'

28  degree of attention, the accuracy of his prior description of the criminal, the level of

United States District Court
Northern District of California

1   certainty demonstrated at the confrontation, and the time between the crime and the

2   confrontation.")  His reaction to Martinez's photograph (and to no other photo) was intense

3   and dramatic, as evidenced by Zuniga's testimony and the transcript:  Zuniga testified that

4   when Garcia saw a photo of Martinez (Photo 4) he stepped back with wide eyes, clenched

5   his teeth and fist, and said something like, "That looks like him."

6          Martinez's contentions are not supported.  His assertion that Garcia never identified

7   him at the photo-line up is flatly contradicted by the record, including the transcript of the

8   recording of the photo-line up.  Also, there is no evidence that Zuniga singled-out his

9   photograph.  Rather, he focused on Martinez's photograph because it was the only one

10  Garcia had selected and because Garcia had a dramatic reaction to it.

11         It is true that Garcia has mental health problems, but there is no evidence that they

12  were affecting him at the time of the shooting or during his identification of Martinez at

13  the photo line-up or at trial.  There is nothing in the transcript of the line-up process that

14  indicates he was affected by mental health problems.

15         Under these circumstances, counsel's decision not to file a motion to suppress the

16  identification was reasonable.  Any such motion would likely have been denied because

17  Garcia's identification was reliable.  Martinez therefore has not shown that ineffective

18  assistance as he has not shown it was reasonable the trial court would have granted a

19  motion to suppress.  *Wilson*, 185 F.3d at 990.

20         Upon an independent review of the record, I conclude that the state court's denial of

21  the claim was not objectively unreasonable and is entitled to AEDPA deference.  This

22  claim is DENIED.

23  **ii.     Failure to File a Pitchess Motion**

24         Martinez claims that counsel rendered ineffective assistance by failing to file a

25  *Pitchess* motion to obtain the police personnel records of officers Zuniga, Gonzalez, and

26  Mixer.[7]  He contends that these records would show that these officers "were engaged in

27  _____

28  [7] Under California's *Pitchess* procedure, a criminal defendant has a limited right to
    discovery of a peace officer personnel records, specifically of complaints made against the

United States District Court
Northern District of California

coercing witnesses, fabricating evidence, acts of dishonesty, [and made] misstatements of facts to create probable cause."  (Pet., Dkt. No. 1-1 at 27.)  According to Martinez, Zuniga and Gonzalez "coerced-fabricated" Garcia's pretrial identification.  (*Id.* at 28.)  In support, he says that Ivan and Jose Becerra "indicated at trial that the detectives[] threatened them, put words in their mouth" and "made promises of leniency."  (*Id.*)

To show prejudice under *Strickland* from failure to file a motion, a petitioner must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him.  *Wilson*, 185 F.3d at 990.

Habeas relief is not warranted here.  First, there is no evidence that the officers coerced or fabricated Garcia's identification, as a review of the line-up procedure transcript shows.  Second, even if the police coerced the Becerras, that does not mean that they coerced Garcia.  Furthermore, there is no evidence that the police coerced the Becerras during their police interviews.[8]

Second, it is speculative to assert that if the *Pitchess* motion had been granted it would have revealed any information about those officers' history that would have corroborated his allegations.  *Osumi v. Giurbino*, 445 F.Supp.2d 1152, 1163 (C.D. Cal. 2006) ("petitioner has failed to identify any evidence his trial counsel would have gleaned had he filed a *Pitchess* motion, and petitioner's mere speculation regarding evidence possibly contained in the arresting officers' personnel files is manifestly insufficient to

---

officer.  *Pitchess v. Superior Court*, 11 Cal. 3d 531 (Cal. 1974); Cal. Penal Code §§ 832.7, 832.8; Cal. Evid. Code §§ 1043-1045.

[8] Ivan Beccera testified at trial that he felt the police detectives were trying to put words in his mouth, were making threats to file charges against him, and that he could get in trouble, (Ans., Reporter's Transcript, Dkt. No. 22-8 at 596-597, 610), but there is nothing in the transcript of the police interview that supports that he was coerced or threatened, (*id.*, Ivan's Police Interview, Dkt. No. 22-3 at 228-367).  Detectives did tell Ivan he was not in trouble, but warned him that if he was covering something up, he could get into trouble.  Ivan testified that he lied to police during the interview, and that he told the police he lied:  "Like I said, everything I told them were lies."  (*Id.*, Reporter's Transcript, Dkt. No. 22-8 at 594, 615, 617.)  It came out during his testimony that he told the police at least three different versions of what had occurred prior to his arrest.  (*Id.* at 616.)

1  demonstrate petitioner was in any manner prejudiced by trial counsel not filing a *Pitchess*

2  motion.")  Upon an independent review of the record, I conclude that the state court's

3  denial of the claim was not objectively unreasonable and is entitled to AEDPA deference.

4  This claim is DENIED.

5  ### iii.    Failure to Obtain Rap Sheets

6        Martinez contends that counsel rendered ineffective assistance by failing to obtain

7  for impeachment purposes the rap sheets for Ivan and Jose Becerra, who testified for the

8  prosecution at trial.  (Pet., Dkt. No. 1-1 at 31-32.)  He asserts that Jose had an outstanding

9  warrant for his arrest at the time of the police interview, went unwillingly to the police

10  station, and was given a "promise of freedom" in exchange for his statements to police.

11  (*Id.* at 31.)

12        This claim fails because Martinez's belief that the rap sheets contained anything of

13  use is speculative, which is not sufficient to show ineffective assistance.  Also, he has

14  shown no evidence that police coerced or made any promises to Jose or Ivan Becerra.  His

15  self-serving statements are insufficient to show ineffective assistance.  *Turner v. Calderon*,

16  281 F.3d 851, 881 (9th Cir. 2002); *Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir.

17  2007).

18        Upon an independent review of the record, I conclude that the state court's denial of

19  the claim was not objectively unreasonable and is entitled to AEDPA deference.  This

20  claim is DENIED.

21  ### iv.    Cell Phone and GPS Records

22        Martinez contends that counsel rendered ineffective assistance by failing to obtain

23  the cell phone and GPS records which would have shown he was not at Pedraza's house at

24  the time of the shooting.  (Pet., Dkt. No. 1-1 at 33.)  Habeas relief is not warranted because

25  Martinez has not presented any evidence that such records, which he could have obtained,

26  would support his claim.  His self-serving statements are insufficient to show ineffective

27  assistance.  *Turner*, 281 F.3d at 881; *Womack*, 497 F.3d at  1004.

28        Upon an independent review of the record, I conclude that the state court's denial of

United States District Court
Northern District of California

14

the claim was not objectively unreasonable and is entitled to AEDPA deference.  This claim is DENIED.

**v.      Failure to Move to Change Venue**

Martinez contends that owing to the publicity arising from the charges, he was unable to receive a fair trial in Monterey County, where the incident occurred, and that counsel rendered ineffective assistance by failing to move for a change of venue.  (Pet., Dkt. No. 1-1 at 36-37.)  He alleges that the initial prosecutor told the media that Martinez was wanted for Pedraza's murder and had escaped from the Monterey County Jail.  (*Id.*)  He also alleges that a dismissed juror he does not identify stated during voir dire that s/he had heard the news about the escape, but later learned he simply had been released.  (*Id.* at 36-37.)  In support of his claims, he has submitted two exhibits.  One shows two photographs of an object.  (*Id.* at 111.)  The other is a letter from his employer, who thought that it was ridiculous Martinez should be charged with escape.  (*Id.* at 113.)

"The standards governing a change of venue ultimately derive from the [D]ue [P]rocess [C]lause of the [F]ourteenth [A]mendment which safeguards a defendant's [S]ixth [A]mendment right to be tried by 'a panel of impartial, 'indifferent' jurors.'" *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1988) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)).  If the trial court is unable to seat an impartial jury owing to "prejudicial pretrial publicity or an inflamed community atmosphere," due process requires that the trial court grant defendant's motion for a change of venue.  *Id.*, (quoting *Rideau v. Louisiana*, 373 U.S. 723, 726 (1963)).

The prejudicial effect of pervasive publicity is tested under the presumed prejudice or the actual prejudice standards.  Under the presumed prejudice standard, "prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime."  *Id.*, (quoting *Rideau*, 373 U.S. at 726-27)  Given that virtually every case of any consequence will be the subject of some press attention, the presumed prejudice principle is rarely applicable, however, and is reserved for an "extreme situation."  *Id.*, (quoting *Mayola v.*

*State of Alabama*, 623 F.2d 992, 997 (5th Cir. 1980)).  Under the actual prejudice standard, a court must determine if the jurors demonstrated actual partiality or hostility that could not be laid aside.  *Id.* at 1363 (quoting *Murphy v. Florida*, 421 U.S. 794, 800 (1975)).  "[J]urors need not, however, be totally ignorant of the facts and issues involved."  *Id.* (quoting *Irvin*, 366 U.S. at 723).  "The relevant question is not whether the community remembered the case, but whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant."  *Id.* (quoting *Patton v. Yount*, 467 U.S. 1025, 1035 (1984)).

Martinez has not shown either presumed or actual prejudice.  He has not presented evidence that demonstrates that Monterey County was saturated with prejudicial and inflammatory media publicity about the crime.  Alleged statements from one dismissed juror and a letter from his employer do not meet this standard.

Nor has Martinez offered any evidence that the members of his jury had such fixed opinions that they could not judge his guilt impartially.  There is no evidence from any of the seated jurors.  He has not alleged, much less shown, that these jurors had fixed opinions, or that they could not be impartial.  In sum, Martinez has not shown that trial counsel should have made a motion to change venue, or that such a motion, if made, would have been meritorious.  *Wilson*, 185 F.3d at 990.

Upon an independent review of the record, I conclude that the state court's denial of the claim was not objectively unreasonable and is entitled to AEDPA deference.  This claim is DENIED.

**vi.    Evidence of the Source of the $6,000**

Police found $6,041.68 in cash on Martinez at the time of his arrest.  (Pet., Dkt. No. 1-1 at 115.)  Martinez claims that counsel rendered ineffective assistance by failing to obtain IRS records or tax preparation records to show that the money was from a tax refund, and not from drug dealing or other illegal activities.  (*Id.* at 39.)  In support of his claim, he points to a Salinas Valley Police Department Receipt showing that the $6,041.68 was released to Martinez's brother Ricardo after trial.  (*Id.* at 115.)

1   At trial, a text message from Martinez's phone was presented.  (Ans., Reporter's

2   Transcript, Dkt. No. 22-8 at 732-733.)  The text, dated February 20, 2014, stated that a

3   check for a tax refund had issued, though the text did not give the amount of the refund.

4   (*Id.*)  Nothing in the phone indicated that Martinez was involved in drug dealing.

5   Habeas relief is not warranted here.  Because there was no evidence that the money

6   had come from drug sales, counsel had no need to present any evidence to the contrary.

7   The receipt from the police gave no indication where the money had come from, and there

8   was nothing on the cell phone that would point to money from drug sales.  Also, counsel

9   presented the text message, which is evidence the money may have been a tax refund.

10  Second, Martinez has not presented any IRS or other records that would support his

11  ineffective assistance claim.  Third, Martinez has not shown prejudice, that had such

12  evidence been presented that there is a reasonable probability that there would have been a

13  different outcome.

14  Upon an independent review of the record, I conclude that the state court's denial of

15  the claim was not objectively unreasonable and is entitled to AEDPA deference.  This

16  claim is DENIED.

### vii.   Alleged Assault on Victim's Son

18  Martinez claims that counsel rendered ineffective assistance by failing to investigate

19  and present evidence that Jose Pedraza, the victim's son, had been the victim of a knife

20  attack.  (Pet., Dkt. No. 1-1 at 54.)  He contends that Juan Pedraza had "personal problems

21  with other people," who retaliated by trying to kill Jose.  (*Id.*)  Such evidence, Martinez

22  contends, would have shown that "victim Pedraza had enemies with serious motives to kill

23  him" and that Jose and Christian were "framing petitioner as they were afraid to disclose[]

24  the identity of the real killer(s)."  (*Id.*)

25  Because Martinez has not presented any evidence that this alleged knife attack

26  occurred, his claim fails.  His own statements are not sufficient.  He also has not presented

27  any evidence for his framing theory.  Without any evidence, he cannot show that counsel

28  was ineffective.  Upon an independent review of the record, I conclude that the state

United States District Court
Northern District of California

1    court's denial of the claim was not objectively unreasonable and is entitled to AEDPA

2    deference.  This claim is DENIED.

3    **viii.    Witness Who Saw Garcia Kicking Victim**

4           Martinez claims that counsel rendered ineffective assistance by failing to investigate

5    a female witness identified as AM4 who allegedly told the police that she saw Christian

6    Garcia kicking the victim after he had been shot.  (Pet., Dkt. No. 1-1 at 45.)

7           Martinez bases his allegation on a page from a police report.  (*Id.* at 117.)  But the

8    page he identifies and attaches as an exhibit says nothing about a female witness who saw

9    Garcia kicking the victim.  Rather, the report states that a police officer saw a man (RM1)

10   standing near Pedraza's house.  (*Id.*)  RM1 stepped out of a nearby market after hearing

11   what he thought were fireworks.  (*Id.*)  He saw "a male subject standing over Pedraza

12   kicking him" at least five times, while "cussing in English."  (*Id.*)  RM1 returned to the

13   market to tell someone to call the police, and when he went back outside the person

14   kicking Pedraza was gone.  (*Id.*)  He "could not provide me with a description of the

15   subject that was kicking Pedraza," nor could he "provide me with a clothing description or

16   any other detailed information."  (*Id.*)

17          Because Martinez has not provided any evidence in support of his allegation, this

18   claim necessarily fails.  The report says nothing about a female witness, but rather speaks

19   of a male witness who saw someone he could not describe kicking Pedraza.  Because there

20   was no basis for counsel to investigate Garcia regarding the matter, counsel did not render

21   ineffective assistance.

22          Upon an independent review of the record, I conclude that the state court's denial of

23   the claim was not objectively unreasonable and is entitled to AEDPA deference.  This

24   claim is DENIED.

25   **ix.    Failure to Object to Pretrial Statements by Jose and Ivan Becerra**

26          Martinez claims that counsel rendered ineffective assistance by failing to object to

27   the introduction of the pretrial statements to police by Jose and Ivan Becerra, which were

28   the product of "threats and promises of leniencies."  (Pet., Dkt. No. 1-1 at 48-51.)

United States District Court
Northern District of California

1    This claim cannot succeed because there was no need for counsel to raise an

2    objection.  There is no evidence in the interview transcripts that the Becerras were

3    threatened or promised leniency.  Also, Ivan testified that he had lied to police, thereby

4    disavowing their pretrial statements.  Upon an independent review of the record, I

5    conclude that the state court's denial of the claim was not objectively unreasonable and is

6    entitled to AEDPA deference.  This claim is DENIED.

7    **x.      Failure to Object to Garcia's Statement**

8        Martinez claims that counsel rendered ineffective assistance by not moving to

9    suppress as coerced Garcia's initial statement to police on March 18, 2014.  (Pet., Dkt. No.

10   1-1 at 52-53.)  This claim cannot succeed because there are no facts to support it.  First,

11   Martinez has not provided any evidence that Garcia's statement was coerced.  Respondent

12   points out that he has not submitted a copy of the statement with his petition.  Second,

13   Garcia did not testify in any direct way about his initial statement to police, and no

14   transcript of that interview was submitted at trial.  At trial, Garcia was shown a transcript

15   of an interview so that he could refresh his memory whether he told police he was drinking

16   a beer (Ans., Reporter's Transcript, Dkt. No. 22-8 at 389-390, 394-395); that transcript

17   appears to have been from a March 19, not March 18, interview.[9]

18       It is possible that the March 18 interview transcript may have been used during

19   cross-examination.[10]  Defense counsel asked questions about Garcia's recollection of

20   various details and offered to show him a transcript, but Garcia declined.  (Ans., Reporter's

21   Transcript, Dkt. No. 22-8 at 434-435.)  And nothing in this record indicates that his initial

22   statement to police was coerced.  Martinez has not shown that had his counsel filed the

23   motion to suppress, it is reasonable that the trial court would have granted it as

24   meritorious, nor that had the motion been granted, it is reasonable that there would have

25

26   _____

27   [9] It is believed to be the March 19 interview because during it police discussed the photo
     line-up, which itself occurred on March 19.  (Ans., Dkt. No. 22-1 at 25.)

28   [10] Respondent states "[w]e are not in possession of the transcript of Garcia's March 18
     interview."  (Ans., Dkt. No. 22-1 at 25.)

United States District Court
Northern District of California

1    been an outcome more favorable to him.  *Wilson*, 185 F.3d at 990.

2         Upon an independent review of the record, I conclude that the state court's denial of

3    the claim was not objectively unreasonable and is entitled to AEDPA deference.  This

4    claim is DENIED.

5    **xi.    Failure to Present Evidence that Garcia was the Shooter**

6         Martinez claims that counsel rendered ineffective assistance to present evidence that

7    Garcia was the actual shooter.  (Pet., Dkt. No. 1-1 at 56-60.)  Martinez offers only

8    speculation, not evidence.  He believes that Garcia murdered Pedraza so that Garcia could

9    exchange Pedraza's cell phone for drugs, or that Garcia was motivated by hallucinatory

10   voices in his head.  (*Id.* at 57.)  He thinks that Garcia was seen kicking the victim, then he

11   stole Pedraza's cell phone and ran to a waiting getaway car.  (*Id.* at 56.)  But there is no

12   evidence to support Martinez's theory and it does not fit the evidence that was presented.

13   Pedraza's neighbors heard gunshots and observed a white SUV speed out of the driveway;

14   Martinez owned a white SUV, which was found a block and half from Pedraza's house

15   after the murder; and, a shotgun was used to kill Pedraza--Jose and Ivan Becerra testified

16   that Jose recently had sold a shotgun to Martinez.  No one identified Garcia as the shooter.

17        Counsel could not have rendered ineffective assistance when he failed to present

18   Martinez's entirely unsupported theory that Garcia was the actual shooter.  Upon an

19   independent review of the record, I conclude that the state court's denial of the claim was

20   not objectively unreasonable and is entitled to AEDPA deference.  This claim is DENIED.

21   **xii.   Failure to Request Modification of CALCRIM No. 315**

22        Martinez claims that counsel rendered ineffective assistance for failing to request

23   modification of jury instruction CALCRIM No. 315 ("Eyewitness Identification"), which

24   states the factors a jury may consider in evaluating eyewitness testimony.  (Pet., Dkt. No.

25   1-1 at 61.)  He contends that counsel should have asked to change three of the factors to

26   say that Garcia "never identified defendant's photo"; that Garcia "was not sure who

27   defendant was on the photo and, did not knew nobody on the photos [*sic*]"; and that he

28   "never identify [*sic*] the defendant in the photos or any physical lineup."  (*Id.* at 62.)

United States District Court
Northern District of California

Due process does not require that an instruction be given unless the evidence supports it. *See Hopper v. Evans*, 456 U.S. 605, 611 (1982); *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005).

Habeas relief is not warranted here because there was no evidence to support a request to modify the instruction. As noted earlier in this Order, Martinez's contention that Garcia failed to identify his photograph is flatly contradicted by the record. Counsel could not have rendered ineffective assistance by failing to request a jury instruction modification when there was no evidence to support modification.[11] Any such request by counsel would likely have been denied by the trial court. Martinez has not shown that had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, nor that had the motion been granted, it is reasonable that there would have been an outcome more favorable to him. *Wilson*, 185 F.3d at 990. Furthermore, "the failure to take a futile action can never be deficient performance." *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

Upon an independent review of the record, I conclude that the state court's denial of the claim was not objectively unreasonable and is entitled to AEDPA deference. This claim is DENIED.

### xiii.    Failure to Request Instruction on Willfully False Testimony

Martinez claims that counsel rendered ineffective assistance when she failed to request to add an instruction, specifically CALJIC No. 2.21.2 ("Witness Willfully False"), to address the discrepancies in Garcia's testimony. (Pet., Dkt. No. 1-1 at 64-65.) He believes that the difference between Garcia's preliminary hearing and trial testimony was so great so as to render the trial testimony false. (*Id.* at 64.) Martinez offers no evidence of any discrepancy and does not point to how the trial testimony was false.

Habeas relief is not warranted because the instruction that was given (CALCRIM

---

[11] Respondent notes that "trial counsel could and did argue in closing argument that Garcia's identification was unreliable because of his mental problems and alleged irregularities in the identification procedure." (Ans., Dkt. No. 22-1 at 27; Reporter's Transcript, Dkt. No. 22-8 at 875-880.)

United States District Court
Northern District of California

No. 226) sufficiently articulated Martinez's preferred instruction.  CALJIC No. 2.21.2, which was not given at trial, states:

> A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others.  You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars.

CALCRIM No. 226 reads in relevant part:

> If you decide that a witness deliberately lied about something significant in this case, you should consider not believing anything that witness says.  Or, if you think the witness lied about some things, but told the truth about others, you may simply accept the part that you think is true and ignore the rest.

Because the instruction given adequately embodies CALJIC No. 2.21.2, counsel cannot have rendered ineffective assistance in failing to request a modification.  "The defendant is not entitled to have jury instructions raised in his or her precise terms where the given instructions adequately embody the defense theory."  *United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir. 1996).

 Any such request by counsel would likely have been denied by the trial court. Martinez has not shown that had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, nor that had the motion been granted, it is reasonable that there would have been an outcome more favorable to him. *Wilson*, 185 F.3d at 990.  Furthermore, "the failure to take a futile action can never be deficient performance." *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

Upon an independent review of the record, I conclude that the state court's denial of the claim was not objectively unreasonable and is entitled to AEDPA deference.  This claim is DENIED.

### xiv.    Failure to Object to Detective Zuniga's Testimony

Martinez claims that counsel rendered ineffective assistance when he failed to object to Detective Zuniga's testimony on redirect as false when he said that Garcia had

witnessed Pedraza's murder.  (Pet., Dkt. No. 1-1 at 68-69.)  The testimony was as follows:

> Q:     Officer Zuniga, you testified that you did not use a video camera for the photo lineup.  Can you tell me why you didn't use a video camera[?]
>
> A:     There was a few different reasons why.  That was discussed between myself and Detective Gonzalez.  <u>And based off the, you know, traumatic event that had just happened to Christian Garcia, witnessing his uncle getting shot and murdered right in front of him, we felt that it would be less intrusive for us to take a camera, set a camera up in his residence, to interview him. We also felt it would be less intrusive for him to transport him back to the police department to obtain another interview from him the day after he just witnessed his uncle getting murdered.</u>  So we went for the option of, hey, let's audio-record it for the sake of Christian Garcia.

(Ans., Reporter's Transcript, Dkt. No. 22-8 at 554-555) (underlining added).

Habeas relief is not warranted on this claim, even if counsel's failure to object could be construed as a deficient performance.  No prejudice resulted.  It is unlikely the jury would have taken Zuniga's mistaken testimony as evidence that Garcia had witnessed the murder.  The jurors had heard Garcia himself testify that he did not see the killing, but rather heard the shots while he was in Pedraza's backyard.  In light of this, and the other evidence at trial, Martinez has not shown that had counsel objected, there is a reasonable probability that the result of the proceeding would have been different.  Upon an independent review of the record, I conclude that the state court's denial of the claim was not objectively unreasonable and is entitled to AEDPA deference.  This claim is DENIED.

## xv.     Failure to Request Live Line-Up

Martinez claims that counsel rendered ineffective assistance when she failed to request a live line-up to test Garcia's identification.  (Pet., Dkt. No. 1-1 at 70.)  He believes that Garcia would not have been able to identify him in a live line-up.  (*Id.* at 73.)

Habeas relief is not warranted here because counsel had sound tactical reasons for not requesting a live line-up.  *Beaudreaux*, 138 S. Ct. at 2650 (habeas courts are to consider arguments or theories that could have supported the state court's summary decision.)  Garcia confidently identified Martinez's photograph.  Counsel likely thought that Garcia would make another confident identification of Martinez at a live line-up,

United States District Court
Northern District of California

23

1   which would have strengthened the reliability of his prior identification.  Because this

2   would have damaged rather than helped Martinez, counsel decided against calling a live

3   identification.  Upon an independent review of the record, I conclude that the state court's

4   denial of the claim was not objectively unreasonable and is entitled to AEDPA deference.

5   This claim is DENIED.

6   **xvi.    Failure to Investigate Garcia's Alleged Statements to Investigators**

7           Martinez claims that counsel rendered ineffective assistance by failing to investigate

8   statements Garcia allegedly made to investigators.  (Pet., Dkt. No. 1-1 at 75.)  He alleges

9   that Garcia said the actual shooter was a former "VGS" gang member; was "a wanted

10  person and was on the run" because he "had shot several people already"; was motivated

11  by jealousy of Pedraza's financial success and "wanted the victim's [contractor] position";

12  was dating Pedraza's daughter and that there was another woman "in the middle" that

13  caused some "conflict."  (*Id.* at 75-76.)

14          Because Martinez has not shown any evidence that Garcia made any of these

15  statements, he has not shown either a deficient performance or prejudice.  Upon an

16  independent review of the record, I conclude that the state court's denial of the claim was

17  not objectively unreasonable and is entitled to AEDPA deference.  This claim is DENIED.

18  **xvii.   Cumulative Error**

19          Martinez claims that the cumulative effect of the trial errors violated his due process

20  right to a fair trial.  (Pet., Dkt. No. 1-1 at 78-80.)

21          In some cases, although no single trial error is sufficiently prejudicial to warrant

22  reversal, the cumulative effect of several errors may still prejudice a defendant so much

23  that his conviction must be overturned.  *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th

24  Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's

25  efforts to challenge every important element of proof offered by prosecution).

26          Where, as here, there is no single constitutional error, nothing can amount to the

27  level of a constitutional violation.  *See Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011).

28  Upon an independent review of the record, I conclude that the state court's denial of the

United States District Court
Northern District of California

claim was not objectively unreasonable and is entitled to AEDPA deference.  This claim is DENIED.

### CONCLUSION

The state court's adjudication of Martinez's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the petition is DENIED.

A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Martinez may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

The Clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED.**

**Dated:**  April 15, 2022



WILLIAM H. ORRICK
United States District Judge